# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

**VS.**                                                            **Case No. 4:15cv512-WS/CAS**

**MARY KEMI AFOLABI,**
**a/k/a OPEOLUWA ADIGUN,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case was initiated in October 2015 when the Government filed a complaint seeking to revoke Defendant's citizenship and cancel her Certificate of Naturalization pursuant to 8 U.S.C. § 1451(a).  ECF No. 1. The pro se Defendant was served with process at FCI Tallahassee, ECF No. 7, and thereafter filed a "motion for trial" on March 10, 2016.  ECF No. 8.  Ruling was not entered on that motion, awaiting Defendant's response to the complaint, and advising that a "trial comes at the end of litigation and not at the beginning."  ECF No. 9.  Defendant's motion was liberally

construed as Defendant's denial under Rule 8 and the parties were provided an opportunity to conduct discovery. *Id.*

Defendant then filed a motion to dismiss on August 9, 2016. ECF Nos. 20-21. The Government filed a memorandum opposing that motion. ECF Nos. 22-23. First, as correctly noted by the Government, ECF No. 22 at 1, Defendant's motion to dismiss is untimely and for that reason alone, it should be dismissed. Pursuant to 8 U.S.C. § 1451(b), Defendant had sixty days "in which to make answers to the petition of the United States." 8 U.S.C. § 1451(b). The motion to dismiss was filed over four months too late. Second, Defendant did not sign the motion, *see* ECF No. 20 at 2, or the supporting memorandum, *see* ECF No. 21 at 11, as required by Rule 11(a). It is insufficient on its face. Third, Defendant argues only that the Government's complaint fails to state a claim. That argument is rejected. The complaint complies with Rule 8(a)(2) of the Federal Rules of Civil Procedure, and presents a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint provides a factual basis in support of the relief sought. The motion to dismiss filed by the Defendant should be denied.

The Government has also filed a motion for summary judgment. ECF No. 24. Defendant was advised of her obligation to file opposition to that motion, ECF No. 25, and given an extension of time to do so. ECF Nos. 26-27. As of this date, Defendant has not responded and the motion for summary judgment is unopposed.

**Standard of Review**

Either the plaintiff or a defendant may move for summary judgment, with or without supporting affidavits, upon all or any part of his or her claim. Fed. R. Civ. P. 56(a). Summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Additionally, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[1] "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). There must be more than a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372,

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Page 5 of 19

380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (cited in Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 129 S.Ct. at 2677).

**Undisputed Facts**

Defendant Mary Kemi Afolabi claims that she was adopted by Mary Lewis Gibson when she was 11 or 12 years of age.  Ex. A at 9, 24.[2]  Mrs. Gibson was also known as Mary Ola David-Gibson and has three birth children: Olukemi, Kayode, and Kola.  Ex. A at 35.  Mrs. Gibson was married to Louis Gibson in the State of Georgia in December 1998.  Ex. C at 78.  Prior to that Mary Gibson had been married to David Afolabi whose marriage was dissolved on January 22, 1998, in Nigeria.  Id. at 77.

In September 2000, Mr. Gibson, a United States citizen, filed a Petition for Alien Relative for his stepchild, Mary Kemi Agolabi.  Ex. C at

---

[2] The page number cited in the exhibit is to the page numbering of the exhibit and not the CMECF page number.  For example, page 24 of the deposition transcript is located at ECF No. 24-1, page 25.  The page number of the actual exhibits will be used throughout this Report and Recommendation as Defendant does not have access to CMECF, the Court's electronic docket.

71-72. Mr. Gibson identified Mary Gibson as his wife and listed three stepchildren. Ex. C at 72. The petition included a birth certificate for Mary Kemi Afolabi issued by the Christ Apostolic Church with a date of birth of May 25, 1984. Ex. C at 74. The parents listed were David and Mary Ola Afolabi. *Id.*

Defendant's name at birth was Opeoluwa Abosede Adigun. Ex. A at 9-10, 88-89.[3] Defendant was born in Ibadan, Nigeria. Ex. A at 10. Defendant claims that she changed her birth name of Opeoluwa Adigun to Mary Kemi Afolabi in 2003, prior to arriving in the United States. Ex. A at 10, 23. Defendant identified her birth mother as Margaret Adigun, Ex. A at 22, but claimed in her deposition that she did not know the name of her birth father. *Id.* at 22-23. Nevertheless, when the Defendant submitted an Application for Immigrant Visa and Alien Registration ("Form DS-230"), at the American Consulate General in Lagos, Nigeria, she reported that her father's name was David Ade Afolabi, and her mother's name was Mary

---

[3] When the Defendant gave birth to her first child in June 2004, the birth certificate lists the mother's name as "Hope Adigun" with a birth date in December 1978. Ex. A at 59-61. During her deposition the Defendant denied that was her correct date of birth. *Id.* at 61.

Case No. 4:15cv512-WS/CAS

Ola Muyiwa, Ex. C at 57, another name for Mary Gibson. *Id.* at 80-81; *see also* Ex. C at 86.

Defendant's Application was filed on December 3, 2003, using the name Mary Kemi Afolabi. Ex. C at 57-60. Defendant reported that she had also used the name Ope, and that she had one child, named Angel Daniel Adjei. *Id.* at 58-59. "In support of her application, Defendant provided a birth certificate issued by the Ibadan Municipal Government stating that Mary Kemi Afolabi was born in May 1984, to David Afolabi and Mary Ola Afolabi." ECF No. 24 at 5 (citing Ex. D at 116). "This birth certificate was registered with the Ibadan Municipal Government on February 17, 1985." ECF No. 24 at 5 (citing Ex. C at 116). The application was approved on March 5, 2004, under the name Mary Kemi Afolabi, a child of a United States citizen. ECF No. 24 at 6 (citing Ex. C at 55).

However, Defendant admitted that she did not begin using the name Mary Kemi Afolabi until 2003 after Mary Gibson allegedly adopted her. *See* Ex. A at 13. Yet her citizenship was based on the prior filing of Form I-130 by Mr. Gibson for his step-daugher, Mary Kemi Afolabi, on September 11, 2000. Ex. C at 71-72. Defendant was not, at that point, using the name Mary Kemi Afolabi. Thus, Mary Kemi Afolabi was not the beneficiary

for who Mr. Gibson petitioned. ECF No. 24 at 25. "Despite not being the true beneficiary of the Form I-130, Defendant continued using the identify of the Mary Kemi Afolabi [Mr. Gibson's step-daughter] to apply for an immigrant visa that Defendant was not entitled to receive." ECF No. 24 at 25 (citing Ex. C at 57-60).

Defendant's 2003 immigrant visa identified her father D. Ade Afolabi, and her mother as M. Ola Muyiwa. Ex. C at 55. On March 18, 2004, Defendant used that visa "to gain admittance to the United States as an immigrant, child of a U.S. citizen, with an immigrant classification of IR2." ECF No. 24 at 6 (citing Ex. C at 55). Under the name Mary Kemi Afolabi, Defendant was granted "permanent resident status on March 18, 2004, as an IR2, child of a U.S. Citizen." ECF No. 24 at 6 (citing Ex. B).

Thereafter, Defendant filed an Application for Naturalization on December 18, 2008. Ex. B at 4-13. The Application was signed under penalty of perjury, certifying all information was true and correct. ECF No. 24 at 6 (citing Ex. B at 13). When asked whether she had ever used other names, Defendant answered "N/A," suggesting she had never used any other names. Ex. B at 13. When asked if she had ever committed a crime or offense for which she was not arrested, she answered no. *Id.* at 11.

She answered "no" when asked if she had "ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" *Id.* She also answered "no" to the question: "Have you ever lied to any U.S. government official to gain entry or admission into the United States?" *Id.*

In March 2009, Defendant was interviewed under oath concerning her Application. ECF No. 24 at 7. Defendant affirmed each answer given on the Application. *Id.* at 7-8. Based on the Application answers and verbal responses during the interview, Defendant's Application for Naturalization was approved on March 10, 2009, under the name Mary Kemi Afolabi. ECF No. 24 at 8 (citing Exhibits B and D). On March 11, 2009, Defendant became a naturalized United States citizen. Ex. B.

On May 11, 2010, Defendant was indicted on 29 counts in the United States District Court for the Northern District of Georgia. ECF No. 24 at 9 citing Ex. E). Noteworthy were charges for access device fraud, aggravated identity theft, bank fraud, immigration fraud, social security fraud, and passport fraud. ECF No. 24 at 8-9 (citing Ex. E). Some of those offenses were committed in December 2008 through January and February 2009. *Id.* Following a jury trial, Defendant was found guilty on all counts

on March 29, 2012, and sentenced on October 2, 2012, to a total term of 100 months imprisonment. Exhibits G (*see* case # 10-cr-0202, N.D. Ga). The first page of the judgment lists the Defendant's name as "Opeoluwa Adigun a/k/a Mary Afolabi"). Ex. G (ECF No. 24-7 at 2). Defendant's conviction and sentence were affirmed on May 23, 2014. ECF No. 24 at 11. *See* United States v. Adigun, 567 F. App'x 708, 719 (11th Cir. 2014), cert. denied, 135 S. Ct. 503 (2014).

At trial, the government "introduced evidence that Adigun had stolen the identity of another Nigerian woman, Mary Afolabi, and had used that identification information to enter the United States, apply for and obtain naturalization, obtain a job as a postal worker, and open financial accounts." Adigun, 567 F. App'x at 710. When Defendant was arrested, the arresting officers searched her vehicle and "discovered receipts of money orders sent to a 'Margaret Adigun' in Nigeria from 'Opi Adigun', in amounts ranging from $100 to $700." 567 F. App'x at 711.

**Analysis**

In relevant part, section 1451(a) provides: "It shall be the duty of the United States attorneys for the respective districts . . . to institute proceedings in any district court of the United States in the judicial district

Case No. 4:15cv512-WS/CAS

in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . ." 8 U.S.C. § 1451(a). This action was brought to revoke the Defendant's naturalized citizenship on the basis that she willfully misrepresented her identity and because her criminal convictions bar her from establishing the requisite good moral character. ECF No. 24.

"[T]he Government 'carries a heavy burden of proof in a proceeding to divest a naturalized citizen of [her] citizenship.'" Costello v. United States, 365 U.S. 265, 269, 81 S.Ct. 534, 536, 5 L.Ed.2d 551 (1961) (quoted in Fedorenko v. United States, 449 U.S. 490, 505, 101 S. Ct. 737, 746-47, 66 L. Ed. 2d 686 (1981)). The reason for imposing this "heavy burden" is that "the right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." Fedorenko, 449 U.S. at 505, 101 S. Ct. at 746.

"The evidence justifying revocation of citizenship must be " 'clear, unequivocal, and convincing' " and not leave " 'the issue in doubt.' "

Case No. 4:15cv512-WS/CAS

Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796 (1943) (quoting Maxwell Land-Grant Case, 121 U.S. 325, 381, 7 S.Ct. 1015, 1028, 30 L.Ed. 949 (1887)) (quoted in Fedorenko, 449 U.S. at 505, 101 S. Ct. at 747).  "Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding."  Fedorenko, 449 U.S. at 505-06, 101 S. Ct. at 747.  "When the government has met [its] burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation of material facts, a district court has no equitable discretion to refrain from entering a judgment of denaturalization."  *Id.* at 517, 101 S.Ct. 737 (cited in United States v. Gomez, 945 F. Supp. 2d 1359, 1364 (S.D. Fla. 2013)).

"To be naturalized, a person must be of good moral character during the five years immediately preceding his or her application for citizenship." Gomez, 945 F. Supp. 2d at 1364 (citing 8 U.S.C. § 1427).  A person cannot show "good moral character" if that person has committed a crime involving moral turpitude.  8 U.S.C. § 1182(a)(2)(A)(i)(I) (cited in ECF No. 24 at 14).  The statute provides that an "alien convicted of . . . a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I).  Additionally,

an "alien convicted of two or more offenses . . . for which the aggregate sentences to confinement were 5 years or more is inadmissible." 8 U.S.C. § 1182(a)(2)(B).

It is undisputed that Defendant was convicted of 29 crimes on October 9, 2012. Crimes of "moral turpitude" include crimes "in which fraud is an ingredient." Jordan v. De George, 341 U.S. 223, 227-229, 71 S. Ct. 703, 706, 95 L. Ed. 886 (1951) (concluding "that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude."); see also Arteaga-Rivera v. U.S. Atty. Gen., 416 F. App'x 821, 823 (11th Cir. 2011) (stating that a conviction for committing bank fraud is a crime involving moral turpitude for purposes of immigration law). Defendant's convictions are for crimes of fraud[4] and, thus, are necessarily fall within the "scope of moral turpitude." Jordan v. DeGeorge, 341 U.S. 223, 229 (1951).

Additionally, it does not matter that an applicant "commits the unlawful acts during the statutory period before he is naturalized, even if he

---

[4] Defendant was convicted of access device fraud, bank fraud, immigration fraud, social security fraud, and passport fraud. ECF No. 24 at 8-9 (citing Ex. E).

Page 14 of 19

is convicted of those crimes after he is granted citizenship." United States v. Gkanios, No. 12-60423-CIV, 2012 WL 5986625, at *5 (S.D. Fla. Nov. 29, 2012), aff'd, 536 F. App'x 854 (11th Cir. 2013) (relying on United States v. Jean–Baptiste, 395 F.3d 1190, 1193–94 (11th Cir. 2005)); see also United States v. Suarez, 664 F.3d 655, 659 (7th Cir. 2011) (stating that "if the offense was committed during the statutory period when an applicant must possess good moral character, and the applicant is convicted of that offense, the applicant is statutorily barred from a finding of good moral character no matter when the conviction occurs.").

Defendant's application for naturalization was submitted on December 18, 2008.  Ex. B at 13 (ECF No. 24-2 at 15).  Pursuant to 8 U.S.C. § 1427(a), Defendant was required to be "a person of good moral character" for the five year period "immediately preceding the date of filing [her] application for naturalization.  Most of the Indictment provided a date of December 2008 as the beginning of her offenses.  Ex. E (ECF No. 24-5 at 2-15.  However, the Indictment charged that as early as May 2006, Defendant opened a bank account in the name of Mary Afolabi and in 2008, Defendant formed a business using that name.  Id. at 4-5.  Acts of bank fraud were committed on December 8, 2008, December 17, 2008,

and December 18, 2008.  *Id.* at 12.  Furthermore, by filing the application for naturalization on December 18, 2008, using the name Mary Afolabi, Defendant committed immigration fraud.  *Id.* at 13.  Defendant was found guilty of those offenses.  Ex. F (ECF No. 24-6 at 2-9).   Because offenses were committed during the statutory period when Defendant was required to possess good moral character, and she was convicted of the offenses, Defendant "is statutorily barred from a finding of good moral character." Suarez, 664 F.3d at 659; Gomez, 945 F. Supp. 2d at 1364.

The doctrine of collateral estoppel bars Defendant from challenging issues litigated and decided in a prior suit.  Gomez, 945 F. Supp. 2d at 1365 (citing CSX Transp., Inc. v. Bhd. of Maint. of Way Employees, 327 F.3d 1309, 1317 (11th Cir. 2003)).  "For collateral estoppel to apply: '(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.'"  CSX Transp., 327 F.3d at 1317 (quoted in Gomez, 945 F. Supp. 2d at 1365); *see also*

United States v. Jean-Baptiste, 395 F.3d 1190, 1194–95 (11th Cir. 2005). The issue of whether Defendant committed fraud, including immigration fraud, was litigated in Defendant's criminal case. The jury found Defendant guilty. She had a fair opportunity to litigate the issue, the Eleventh Circuit upheld the conviction, and Defendant is estopped from denying the facts underlying her conviction. 945 F. Supp. 2d at 1365.

Defendant's convictions for crimes of mortal turpitude which occurred prior to her naturalization bar her from demonstrating that she is a person of good moral character. Accordingly, she did not meet the requirements for naturalization and the motion to denaturalize the Defendant should be granted.

The Government has shown by clear, convincing, and unequivocal evidence that the Defendant illegally procured her citizenship because she lacked the good moral character required for naturalization. Defendant has not responded to the summary judgment motion and, thus, she has not demonstrated a genuine dispute of material fact on this issue. Defendant's naturalized citizenship should be revoked and Plaintiff's motion for summary judgment, ECF No. 24, should be granted.

As additional relief, the Government requests that: (1) Defendant's certificate of naturalization be canceled, (2) that Defendant be precluded from claiming or exercising any rights, privileges, or advantages of United States citizenship based on her March 11, 2009 naturalization; (3) that Defendant be required to "immediately surrender and deliver to the Attorney General her original certificate of naturalization, any U.S. passport issued to her , and any other indicia of U.S. citizenship (e.g., voter registration cards), including any copies thereof, in her possession or control; and (5) requiring Defendant to immediately make good faith efforts to recover and then surrender to the Attorney General any and all of the above-described items that she knows are in the possession of others." ECF No. 24 at 30-31.  No opposition to these requests have been made. The motion should be granted in its entirety.

Finally, the Government requests that a hearing be set in which "Defendant must demonstrate that she has complied with the Judgment, unless the Government provides notice to the Court prior to the hearing that Defendant has fully complied."  ECF No. 24 at 31.  Defendant should be ordered to comply with the requests for relief.  However, a hearing

should not be held absent the Government's demonstrated need to enforce an Order of this Court.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for a trial, ECF No. 8, and motion to dismiss, ECF No. 20, be **DENIED**. It is further **RECOMMENDED** that the Plaintiff's motion for summary judgment, ECF No. 24, be **GRANTED**, that Defendant's citizenship be canceled and revoked pursuant to 8 U.S.C. § 1451 and the Clerk of this Court be directed to transmit a certified copy of the Order adopting this Report and Recommendation to the Attorney General as required by 8 U.S.C. § 1451(f). Defendant should be required to immediately surrender and deliver to the United States Attorney General or his representative her original certificate of naturalization, any United States passport, and all other indicia of United States citizenship.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2017.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**